**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2391
_____

GREGORY J. HARTNETT; ELIZABETH M. GALASKA;
ROBERT G. BROUGH, JR.; JOHN M. CRESS,
Appellants

v.

PENNSYLVANIA STATE EDUCATION ASSOCIATION;
HOMER-CENTER EDUCATION ASSOCIATION;
TWIN VALLEY EDUCATION ASSOCIATION;
ELLWOOD AREA EDUCATION ASSOCIATION;
HOMER-CENTER SCHOOL DISTRICT;
TWIN VALLEY SCHOOL DISTRICT;
ELLWOOD CITY AREA SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-17-cv-00100)
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 27, 2020

Before: CHAGARES, RESTREPO, and BIBAS,
*Circuit Judges*

(Filed: June 25, 2020)
_____

Milton L. Chappell
National Right to Work Legal Defense Foundation
8001 Braddock Road, Suite 600
Springfield, VA 22151

David R. Osborne
Nathan J. McGrath
The Fairness Center
500 North Third Street, 2nd Floor
Harrisburg, PA 17101

    *Counsel for Appellants*

Joseph F. Canamucio
Pennsylvania State Education Association
400 North Third Street, P.O. Box 2225
Harrisburg, PA 17101

Jason Walta
Office of General Counsel
National Education Association
1201 16th Street, NW, Room 820
Washington, DC 20036

    *Counsel for Appellees Pennsylvania State Education*
    *Association, Homer-Center Education Association, Twin*
    *Valley Education Association, and Ellwood Area*
    *Education Association*

Joshua D. Shapiro
Nancy A. Walker
J. Bart DeLone
Office of the Attorney General of Pennsylvania
1600 Arch Street, Suite 300
Philadelphia, PA 19103

*Counsel for Amici Governor of Pennsylvania and
Attorney General of Pennsylvania*

————————————

## OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

Just because a statute may be unconstitutional does not mean that a federal court may declare it so. If there is no real dispute over a statute's scope or enforceability, we must dismiss any suit attacking it, no matter how obvious the result may seem.

A group of public-school teachers challenged a Pennsylvania statute that authorizes their local unions to deduct fees from their paychecks even though they do not belong to the union. After the Supreme Court invalidated another state's similar statute, the parties all agreed that Pennsylvania's law was unenforceable too.

The District Court correctly held that this development mooted this case. The parties no longer dispute whether the statute is enforceable, and there is no reason to think that anyone will try to collect agency fees from these teachers again. If

a court is to formally declare the statute unconstitutional, that will have to await a future case in which the parties earnestly dispute its validity.

## I. BACKGROUND

### A. Legal background

Some public-sector employees join their local unions; others choose not to. Even so, if a collective-bargaining agreement contains an "agency-fee" provision, both union members and nonmembers must pay a portion of union dues. *See, e.g.*, *Harris v. Quinn*, 573 U.S. 616, 624 (2014). A Pennsylvania statute authorizes this practice as a "fair share fee" arrangement. 71 Pa. Stat. §575(b). Nonmembers need not pay full union dues, but only the amount spent on the union's collective-bargaining activities. *Id.* §575(a). Thus, they do not have to subsidize lobbying or other political activity.

For four decades, this setup was permissible under the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). In *Abood*, public-school teachers successfully challenged a law that forced nonmembers to pay full dues. *Id.* at 212–13, 235–36. The Supreme Court agreed that the First Amendment protected them from having to subsidize the union's political activities "unrelated to its duties as exclusive bargaining representative." *Id.* at 234. But it held that the government could still require nonmembers to subsidize public-sector union expenses related to collective bargaining, administering contracts, and handling grievances. *Id.* at 232.

Dissatisfied with *Abood*'s compromise, public-sector employees who chose not to join unions kept bringing First

4

Amendment challenges. Eventually, they succeeded. In 2018, the Supreme Court overruled *Abood* in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018). In *Janus*, the Court held that forcing nonmembers to pay agency fees violates the First Amendment, even if those fees go toward collective bargaining. *Id.* at 2486. It thus struck down an Illinois statute allowing collection of agency fees. *See id.* at 2460–61. Though *Janus* said nothing about Pennsylvania law, its holding was clear: "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Id.* at 2486.

## B. Procedural background

This action began in the runup to *Janus*. Appellants are four public-school teachers who did not belong to a union but had to pay agency fees under Pennsylvania law. They sued their school districts, superintendents, and teachers' unions, though only the unions remain as appellees. The teachers sought a declaration that the agency-fee provisions in their collective-bargaining agreements, as well as the Pennsylvania statutes authorizing them, were unconstitutional. They also sought an injunction requiring the unions to delete the agency-fee provisions from the collective-bargaining agreements and banning them from future agreements. Though the teachers had at first sought nominal damages too, the defendants paid each teacher $100 to satisfy those claims.

After the Supreme Court decided *Janus*, the unions did not try to salvage their agency-fee setup. Indeed, the very day the Supreme Court issued its decision, the Pennsylvania State Education Association notified public schools of the decision and told them to stop deducting agency fees from teachers'

5

paychecks. It also set up procedures to refund all agency fees collected during or attributable to the period after *Janus*. And at the state level, Pennsylvania's Department of Labor and its Office of Attorney General notified public-sector employers that they could no longer collect agency fees.

The teachers moved for summary judgment based on *Janus*. In response, the unions argued that the change in the law and their compliance with it had mooted the case. The District Court agreed that the case had become moot and dismissed it. *Hartnett v. Pa. State Educ. Ass'n*, 390 F. Supp. 3d 592, 602 (M.D. Pa. 2019). The teachers now appeal.

The District Court had jurisdiction under 28 U.S.C. §1331. Whether or not the case is moot, we have jurisdiction under §1291. We review the District Court's factual findings for clear error and its legal conclusions de novo. *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475 n.4 (3d Cir. 2016).

## II.  THIS CASE IS MOOT

### A.  Mootness principles

1. *Standing and mootness allocate different jurisdictional burdens.* Article III gives federal courts jurisdiction over "Cases" and "Controversies." U.S. Const. art. III, §2, cl. 1. Thus, federal courts can entertain actions only if they present live disputes, ones in which both sides have a personal stake. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009). At the start of litigation, the burden rests on the plaintiff, "as the party invoking federal jurisdiction," to show its standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). That

6

requires showing injury in fact, causation, and redressability. *Id.* But once the plaintiff shows standing at the outset, she need not keep doing so throughout the lawsuit.

Instead, the burden shifts. If the defendant (or any party) claims that some development has mooted the case, it bears "[t]he 'heavy burden of persua[ding]' the court" that there is no longer a live controversy. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). In other words, mootness is not just "the doctrine of standing set in a time frame." *Id.* at 189–90 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). Standing and mootness are "two distinct justiciability doctrines." *Freedom from Religion Found.*, 832 F.3d at 475–76. So sometimes a suit filed on Monday will be able to proceed even if, because of a development on Tuesday, the suit would have been dismissed for lack of standing if it had been filed on Wednesday. The Tuesday development does not necessarily moot the suit.

2. *Voluntary cessation does not always trigger mootness.* One scenario in which we are reluctant to declare a case moot is when the defendant argues mootness because of some action it took unilaterally after the litigation began. This situation is often called "[v]oluntary cessation," and it "will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). When a

7

plaintiff seeks declaratory relief, a defendant arguing mootness must show that there is no reasonable likelihood that a declaratory judgment would affect the parties' future conduct. *See, e.g.*, *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam); *United States v. Gov't of the V.I.*, 363 F.3d 276, 285 (3d Cir. 2004).

Voluntary cessation cases highlight the important difference between standing (at the start of a suit) and mootness (mid-suit). The shift in the burden of proof from plaintiff to defendant matters. It means that sometimes, "the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth*, 528 U.S. at 190.

While the case law speaks largely of *voluntary* cessation, these principles apply even when the defendant's cessation is not entirely voluntary. Take *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012). The City of Albuquerque had forbidden sex offenders to use public libraries. *Id.* at 1116. An affected sex offender sued and won an injunction, so the City started letting sex offenders use its libraries. *Id.* at 1117 & n.5. But that did not moot the case. Though the City had complied for the time being, it "forcefully maintained the constitutionality of the enjoined [policy]" and planned to reinstate it in the future. *Id.* at 1117 n.5; *see also DeJohn v. Temple Univ.*, 537 F.3d 301, 310 (3d Cir. 2008). Yet if the City's attitude had been different, the answer to the mootness question could well have differed too. *See DeJohn*, 537 F.3d at 310. What was important was whether the City could reasonably be expected to engage in the challenged behavior again. *Friends of the Earth*, 528

U.S. at 189. That is always the key question, no matter *why* the defendant ceased its behavior.

To be sure, the defendant's reason for changing its behavior is often probative of whether it is likely to change its behavior again. We will understandably be skeptical of a claim of mootness when a defendant yields in the face of a court order and assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012); *see also* 13C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3533.5, at 248 (3d ed. 2008). On the other hand, if the defendant ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger. *See, e.g.*, *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007); *Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 193 (3d Cir. 2001) (Alito, J.).

In short, the touchstone of the voluntary-cessation doctrine is not how willingly the defendant changed course. Rather, the focus is on whether the defendant made that change unilaterally and so may "return to [its] old ways" later on. *Friends of the Earth*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982)). Perhaps it would be more accurate to call it the volitional-cessation doctrine.

Though voluntary or volitional cessation is often described as an exception to mootness, that is not quite right. The burden always lies on the party claiming mootness, whether the case involves voluntary cessation or not. *See Friends of the Earth*,

9

528 U.S. at 189. Voluntary cessation is just a recurring situation in which courts are particularly skeptical of mootness arguments. That is why, in voluntary-cessation cases, defendants' burden of showing mootness is heavy. *Id.*

### B. This case is moot because there is no reasonable likelihood that the unions will seek to collect agency fees in the future

The facts here present an especially strong case of mootness by voluntary cessation. Until *Janus*, the unions had every reason to believe, under *Abood*, that they could collect agency fees from nonmembers. Once the Supreme Court changed course in *Janus*, the unions immediately stopped collecting agency fees. And since *Janus*, they have conceded that Pennsylvania's agency-fee arrangement violates the First Amendment and have forsworn collecting fees from nonmembers. So we see no reasonable likelihood that the unions will try to collect agency fees from the teachers ever again. *Cf. Knox*, 567 U.S. at 307–08 (finding a similar challenge not moot because the defendant union insisted that agency fees were constitutional). Thus, the unions have borne their "formidable burden of showing that it is absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190.

In response, the teachers cite other unions' collective-bargaining agreements that have, even after *Janus*, included agency-fee language. We are unmoved. For one, the mootness inquiry focuses on the parties before us. A court can enter a declaratory judgment "if, and only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes*, 488 U.S. at 4 (per

curiam). And the mere presence of language in contracts causes no harm. The teachers neither show nor even allege that any public-sector union in Pennsylvania has tried to enforce those provisions since *Janus*.

### C. Decisions allowing other constitutional challenges to go forward are irrelevant

In trying to salvage this litigation, the teachers cite other constitutional challenges that have proceeded even after a landmark Supreme Court decision changed the lay of the land. They take this as evidence that a challenge to a state's statute necessarily survives the invalidation of another state's equivalent. But our mootness inquiry is not guided by broad rules like this one; it depends on the particular facts of each case. And the cases they invoke are inapposite.

For instance, the teachers note that even after the Supreme Court decided *Citizens United*, lower courts kept striking down campaign-finance statutes whose unconstitutionality had become clear. *See Citizens United v. FEC*, 558 U.S. 310, 365–66 (2010). But that was a complex decision striking down a specific set of federal campaign-finance laws. So it is no surprise that there were still open questions about how it applied to many federal, state, and local campaign-finance rules. Indeed, it does not appear that the litigants even suggested mootness in the post-*Citizens United* cases cited by the teachers.

Here, however, no one questions whether public-sector unions can still collect agency fees from nonmembers. It is simple: agency-fee arrangements were allowed by *Abood*, then banned by *Janus*. Neither party has advanced any reason why

11

the Pennsylvania law might escape *Janus*'s broad holding that "public-sector agency-shop arrangements violate the First Amendment" and thus that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." 138 S. Ct. at 2478, 2486.

The teachers also cite challenges to laws related to same-sex marriage after *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). But the main case they cite went beyond *Obergefell*, addressing not just whether same-sex couples could marry but whether states had to afford them all the incidental benefits of marriage. *See Waters v. Ricketts*, 798 F.3d 682, 685–86 (8th Cir. 2015) (per curiam). That case noted that *Obergefell* had not spoken to the validity of all marriage-benefits laws. *Id.* By contrast, *Janus* declared unequivocally that collecting agency fees from nonmembers is unconstitutional, and we see no lingering subsidiary questions. *See* 138 S. Ct. at 2478, 2486. At the very least, none are presented here.

### D. Because this case no longer presents a live controversy, the District Court was correct to dismiss it

Finally, the teachers argue that dismissal for mootness was not the right disposition. According to them, once the parties agreed that the challenged statutes were unconstitutional and that there were no more factual disputes, the District Court should have declared the Pennsylvania statute unconstitutional.

Not so. The lack of any disagreement between the parties over the facts or the law, and the lack of any continuing injury

12

to the teachers, is precisely what makes the case moot. And once that happens, any declaratory judgment would be an advisory opinion.

The teachers thus err in insisting that the case remains alive because a court could still grant them "effectual relief." Appellants' Br. 14 (quoting *Knox*, 567 U.S. at 307). A live controversy requires not only the possibility of awarding relief, but also a real dispute between the parties about the facts or the law. There is no such dispute here.

We understand that the teachers might rest more easily if a court declared 71 Pa. Stat. § 575(b) unconstitutional. But the federal courts are not "roving commissions" charged with scrubbing invalid laws from the statute books. *Broadrick v. Oklahoma*, 413 U.S. 610, 610–11 (1973). Instead, we will await a case where the parties earnestly dispute the validity or enforceability of Pennsylvania's agency-fee statute. Because this is not that case, there was nothing for the District Court to do other than dismiss it as moot. It correctly did so.

\* \* \* \* \*

It may seem odd that unconstitutional laws remain on the books. But until a party faces a real threat of enforcement, a statute is mere words on a page, and federal courts cannot opine on its validity.

At the start of this suit, the teachers faced ongoing harm from the unions' collection of agency fees. That got them through the courthouse doors. But once the Supreme Court made clear that public-sector agency fees are unconstitutional, the unions emphatically disclaimed any intent to enforce the

challenged statute. Because the teachers have nothing to fear, we will affirm.