**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2434
_____

GARRETT KAJMOWICZ,
Appellant

v.

MATTHEW G. WHITAKER, in his official capacity as
former Acting Attorney General United States of America;
BUREAU OF ALCOHOL TOBACCO FIREARMS &
EXPLOSIVES, an agency of the Department of Justice;
DIRECTOR BUREAU OF ALCOHOL
TOBACCO FIREARMS & EXPLOSIVES;
UNITED STATES OF AMERICA;
ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.: 2-19-cv-00187)
District Judge: Hon. Mark R. Hornak
_____

Argued April 28, 2022

(Filed: July 21, 2022)

Before:  HARDIMAN, RENDELL, and FISHER, *Circuit Judges*.

Thomas C. Goldstein
Daniel H. Woofter   [Argued]
Goldstein & Russell
7475 Wisconsin Avenue
Suite 850
Bethesda, MD 20814
            *Counsel for Appellant*

Brian M. Boynton
Cindy K. Chung
Scott. R. McIntosh
Sarah W. Carroll     [Argued]
United States Department of Justice
Civil Division, Appellate Staff
Room 7511
950 Pennsylvania Avenue NW
Washington, DC 20530
            *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

RENDELL, *Circuit Judge*.

Matthew Whitaker's service as Acting Attorney General of the United States has engendered both litigation and academic debate.  The President's decision to rely on his authority under the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345-3349d (the "Vacancies Reform Act"), to bypass the

Department of Justice's order of succession[1] and to select an employee rather than a Presidentially appointed and Senate-confirmed officer to oversee the Department of Justice raised significant and largely unresolved constitutional and statutory questions. *See* Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 617-18, 657, 662-65, 667-68, 670-71 (2020). Garrett Kajmowicz asks us to resolve these questions. We decline because we need not do so to decide his case.

Kajmowicz sued Whitaker, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Director of ATF, the United States of America, and the Attorney General of the United States, contending that Whitaker's unlawful service as Acting Attorney General rendered a rule he promulgated invalid. Attorney General William Barr, however, ratified this rule, meaning that, as long as he did so effectively, this rule may stand even if Whitaker served in violation of the Vacancies Reform Act or the Appointments Clause. We, like the District Court, conclude that this ratification forecloses Kajmowicz's challenge to this rule, so we will affirm the District Court's dismissal without addressing the legality of Whitaker's designation as Acting Attorney General.

---

[1] 28 U.S.C. § 508 (establishing that, "[i]n case of a vacancy in the office of Attorney General," the Deputy Attorney General may serve as Acting Attorney General and, if he is unavailable to do so, "the Associate Attorney General shall" do so).

I.

A.

Since the 1790s, Congress has authorized Presidents to designate acting officials to temporarily fill vacant Presidentially appointed and Senate-confirmed offices yet has also restricted who can serve and how long such persons can serve as acting officials. *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017). While its first statutes permitted the designation of acting officials in only certain departments, *see* Act of May 8, 1792, ch. 37, § 8, 1 Stat. 279, 281; Act of Feb. 13, 1795, ch. 21, 1 Stat. 415, in the 1860s, Congress expanded this permission to cover all "the executive department[s] of the government," Act of July 23, 1868, ch. 227, §§ 1, 3, 15 Stat. 168, 168; *see* Act of Feb. 20, 1863, ch. 45, § 1, 12 Stat. 656, 656. To balance this expansion of the President's authority, Congress imposed new restrictions under the Vacancies Act of 1868 (the "Vacancies Act"): a "default rule" specifying which officials the President could designate as acting officials and a ten-day time limit on acting service. *SW. Gen.*, 137 S. Ct. at 935 (citing §§ 1, 3, 15 Stat. at 168)). Over the next hundred years, the President's statutory authority to designate acting officials remained largely unchanged. *See id.* (noting that Congress later allowed acting officials to serve for 30 days); *see also* Act of Sept. 6, 1966, Pub. L. No. 89-554, §§ 3345-49, 80 Stat. 378, 425-26 (codifying the Vacancies Act as amended and revised in the United States Code).

Beginning in the 1970s, Executive Branch officials started to claim that they held authority to appoint acting officials outside the Vacancies Act and therefore could designate acting officials to serve without abiding by the Act's

4

restrictions. *See SW. Gen.*, 137 S. Ct. at 935-36; Morton Rosenberg, Cong Rsch. Serv., 98-892, The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative, 2-4 (1998). As the Executive Branch continued to flout the Vacancies Act's limitations in the 1980s, Congress amended the Vacancies Act in 1988, confirming that it applied to all executive departments and agencies yet extending the time limits for acting service to 120 days. *SW Gen.*, 137 S. Ct. at 935-36; Rosenberg, *supra*, at 3. Despite this response, throughout the 1990s, the Executive Branch continued to disregard the Vacancies Act's restrictions on the service of acting officials, particularly its time limits, so, unsurprisingly, "[t]he conflict [between the Executive and Legislative Branches] did not abate[.]" O'Connell, *supra*, at 626; *SW Gen.*, 137 S. Ct. at 936.

In 1998, Congress responded by replacing rather than amending the Vacancies Act. Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. 105-277, § 151, 112 Stat. 2681, 2681-611 to -616 (1998) (codified as amended at 5 U.S.C. §§ 3345-49d); *see SW Gen.*, 137 S. Ct. at 936. The new Vacancies Reform Act represented "a reclamation of the Congress's Appointments Clause power." *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015) (citations omitted), *aff'd,* 137 S. Ct. 929 (2017). The Act's framework consists of five main parts. The Act (1) limits which officials can serve as acting officers and recognizes the office's "first assistant" as the default choice, 5 U.S.C. § 3345; (2) establishes time limits for the length of an official's service as an acting officer, *id.* § 3346; (3) confirms that the Act provides "the exclusive means" for appointing acting officers subject to a few exceptions, *id.* § 3347; (4) nullifies and prohibits the ratification of certain actions performed in

5

violation of the Act, *id.* § 3348; and (5) requires the Executive Branch to report vacancies and acting appointments to Congress, *id.* § 3349. Kajmowicz's challenge to a rule promulgated by Whitaker as Acting Attorney General and its subsequent ratification calls for us to consider the fourth part, section 3348.

B.

In November 2018, Jefferson Sessions III, the Attorney General of the United States, resigned. As a result, 28 U.S.C. § 508—the statute detailing the Department of Justice's line of succession—authorized Deputy Attorney General, Rod Rosenstein, to "exercise all the duties of" the Attorney General. Nevertheless, President Trump, relying on his authority under the Vacancies Reform Act "directed" Whitaker, Sessions's Chief of Staff, "to perform the functions and duties of the office of Attorney General, until the position is filled by appointment or subsequent designation." JA 66. Whitaker served as Acting Attorney General until William Barr was sworn in as the Attorney General of the United States in February 2019.

During his tenure as Acting Attorney General, Whitaker issued a rule (the "Rule") concerning the scope of the term "machinegun" under the Gun Control Act of 1968, 18 U.S.C. §§ 921-28, and the National Firearms Act, 26 U.S.C. §§ 5801-72. Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (codified at 27 C.F.R. §§ 447.11, 478.11, 479.11). In doing so, he exercised the Attorney General's authority under both statutes to promulgate rules and regulations to enforce their provisions.[2] The Rule provides that a rifle with an

---

[2] 18 U.S.C. § 926(a) ("The Attorney General may prescribe only such rules and regulations as are necessary to carry out

6

attached "bump stock"[3] qualifies as a "machinegun" under these statutes. Bump-Stock-Type Devices, 83 Fed. Reg. at 66,514-15, 66,543. Consequently, it prohibits the possession of bump stocks after March 26, 2019 and requires individuals to surrender or destroy such stocks by this date. *Id.* at 66,514-15, 66,520, 66,530, 66,543.

---

the provisions of this chapter . . . ."); 26 U.S.C. § 7805(a) (authorizing "the Secretary" to "prescribe all needful rules and regulations for the enforcement of this title"); *see* 26 U.S.C. § 7801(a)(2)(A) (explaining that, for the provisions of the National Firearms Act, "the term 'Secretary' or 'Secretary of the Treasury' shall . . . mean the Attorney General").

Congress transferred the Secretary of the Treasury's authority to enforce the National Firearms Act's provisions to the Attorney General when it moved ATF within the Department of Justice. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 1111-12, 116 Stat. 2135, 2274-79. In 2003, the Attorney General subdelegated his rulemaking authority under both statutes to the Director of ATF. *See* 28 C.F.R. § 0.130(a)(1)-(2); Organization of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, 68 Fed. Reg. 4923, 4926 (Jan. 31, 2003).

[3] When attached to a rifle in place of an ordinary stationary stock, a "bump stock" allows the shooter of a semiautomatic rifle to approximate the rapid fire of an automatic weapon. *Guedes v. ATF*, 920 F.3d 1, 7 (D.C. Cir. 2019) (per curiam).

Several weeks before the Rule's effective date, Kajmowicz, the owner of two bump stocks,[4] sued Whitaker and others, challenging the Rule. He claimed that the Rule was invalid because Whitaker issued it when he was unlawfully serving as Acting Attorney General. The next month, Attorney General Barr, aware of legal challenges to the Rule, ratified it after he "familiarized [himself] with the rulemaking record that was before the Acting Attorney General and . . . reevaluated those materials without any deference to [the Acting Attorney General's] earlier decision." Bump-Stock-Type-Devices, 84 Fed. Reg. 9239, 9240 (Mar. 14, 2019).

Soon thereafter, Kajmowicz twice amended his complaint. The Government moved to dismiss the amended complaint for lack of jurisdiction or, in the alternative, for failure to state a claim. In turn, Kajmowicz moved for summary judgment on his claims. When the District Court held argument on these motions several months later, Kajmowicz requested leave to amend his complaint for the third time, as he wished to add claims that the Vacancies Reform Act prohibited the Attorney General from ratifying the Rule. The District Court granted this request and dismissed both the Government's and Kajmowicz's pending motions without prejudice.

Kajmowicz then filed his Third Amended Complaint. In it, as he had in his previous complaints, he challenged the Rule on the basis that Whitaker's service as Acting Attorney General violated the Vacancies Reform Act and the

---

[4] As required by the Rule, Kajmowicz surrendered both stocks to ATF in March 2019, and ATF is safekeeping them until challenges to the Rule are resolved.

Appointments Clause and challenged President's Trump's purported "policy" of employing the Vacancies Reform Act to designate employees to serve as officers in violation of the Act and the Appointments Clause. For the first time, he alleged that the Rule remained invalid despite Attorney General Barr's purported ratification because the Vacancies Reform Act prevented Barr from ratifying Whitaker's promulgation of the Rule. The Government, again, moved to dismiss Kajmowicz's complaint for lack of jurisdiction or, in the alternative, for failure to state a claim.

The District Court rejected Kajmowicz's challenges to both the President's alleged acting-appointments policy and the Rule. It first held that Kajmowicz lacked Article III standing to pursue his acting-appointments-policy challenge because his claimed injury was too speculative to constitute an injury in fact.[5] Next, the District Court determined Attorney General Barr validly ratified the Rule, concluding that the Vacancies Reform Act did not prohibit his ratification. Lastly, the Court held that the voluntary cessation doctrine provided no basis for it to still entertain Kajmowicz's challenge to Whitaker's appointment because the ratification did not moot his claims, and, even if it did, the defendants had not mooted them. After determining that further amendment would be futile, the District Court dismissed Kajmowicz's acting-appointments-policy claims without prejudice yet also without leave to amend and dismissed his remaining claims with prejudice.

Kajmowicz timely appealed

---

[5] Kajmowicz does not challenge this determination on appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. "We review a District Court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*." *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014). In this review, "we accept all well-pleaded allegations as true and construe them in the light most favorable to the non-moving party." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 204 n.2 (3d Cir. 2021). To survive a motion to dismiss for failure to state a claim, the complaint "must contain enough facts to state a claim for relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (internal quotation marks and citation omitted).

## III.

Kajmowicz urges us to set aside the Rule because Whitaker issued it while he was serving as Acting Attorney General, allegedly in violation of the Vacancies Reform Act. The Rule's validity, however, no longer necessarily rests on Whitaker's authority because Attorney General Barr ratified the Rule in March 2019. If a lawfully appointed official ratifies his predecessor's action and does so in accordance with the law, that ratification may "remedy a defect arising from the decision of an improperly appointed" predecessor. *Moose Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020) (holding that an FDA Commissioner's ratification of a rule "cured any Appointments Clause defect" in the rule when it was issued); *see NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 160-63 (2d Cir. 2021) (holding that the NLRB General Counsel's ratification of the Acting General Counsel's action resolved the appellee's challenge to this action based on the Acting General Counsel's

10

unlawful service under the Vacancies Reform Act); *CFPB v. Gordon*, 819 F.3d 1179, 1190-92 (9th Cir. 2016) (holding that the CFPB Director's ratification of his earlier decision to bring an enforcement action after he was validly appointed "resolves any Appointments Clause deficiencies" in this enforcement action). For his ratification to cure such a defect, the ratifying official must (1) "at the time of the ratification, . . . have the authority to take the action to be ratified," (2) "have full knowledge of the decision to be ratified," and (3) "make a detached and considered affirmation of the earlier decision." *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602 (3d Cir. 2016).

Despite challenging the Rule's ratification, Kajmowicz does not argue that Attorney General Barr failed to satisfy these three requirements. *See id.* at 604 (placing the burden on the party challenging an agency's ratification to allege facts that "cast[] doubt" on the purported ratification). Indeed, the ratification does not appear to be lacking in this respect. *See Bump-Stock-Type-Devices*, 84 Fed. Reg. at 9240. Rather, he maintains that Attorney General Barr's ratification does not resolve this case because he contends that the Vacancies Reform Act prohibited it. We disagree.

A.

Just as with any other question of statutory interpretation, we turn first to the Vacancies Reform Act and its text. *See Rotkiske v. Klemm*, 890 F.3d 422, 424-25 (3d Cir. 2018) (en banc), *aff'd*, 140 S. Ct. 355 (2019). The Act bars ratification of "action[s] taken . . . in the performance of any *function or duty* of" a Presidentially appointed and Senate-confirmed office. 5 U.S.C. § 3348(d) (emphasis added). It also provides two definitions of a "function or duty," and the

11

parties agree that Whitaker's promulgation of the Rule implicates the first: a "function or duty of the applicable office" that "(i) is established by statute; and (ii) is required by statute to be performed by the applicable officer (and *only that officer*)." 5 U.S.C. § 3348(a)(2)(A) (emphasis added).[6] Whether the Act prohibited the Attorney General's purported ratification requires us to consider this definition's latter half—when does a statute "require[]" an "officer (and only that officer)" to exercise the authority it creates?

To start, we consider the statute's plain meaning. *Burton v. Schamp*, 25 F.4th 198, 207 (3d Cir. 2022). "Th[e] statutory language is unambiguous: the [Vacancies Reform Act] applies only to functions and duties that a [Presidentially appointed and Senate-confirmed] officer alone is permitted by statute . . . to perform. It does not apply to delegable functions and duties." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022). The District Court adopted this same reading, determining that "function[s] and dut[ies]" are only those "nondelegable functions made exclusive to [a] specific office by a statute[.]" JA 12. Of course, the Vacancies Reform Act includes neither the terms *nondelegable* nor *exclusive*. *See L.M-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 33 (D.D.C. 2020). But Congress need not have included these terms when it already included the parenthetical qualifier "and only that officer[.]" 5 U.S.C. § 3348(a)(2)(A)(ii).

---

[6] We refer to the authority covered by this definition as "statutory functions or duties." The other definition concerns "function[s] or dut[ies] . . . established by regulation[.]" *Id.* § 3348(a)(2)(B). We refer to authority covered by this definition as "regulatory functions or duties."

The concept of delegation, more specifically subdelegation,[7] as section 3348(a)(2)(A)'s text makes clear, helps define the statute's scope. As the District Court reasoned, a statute "require[s]" a specific "officer (and only that officer)" to perform the function only if the statute prohibits the delegation of that function. *Id.* On the other hand, if a statute tasks an officer with certain responsibilities yet permits him to subdelegate them, then it does not "require[]" that "officer (and *only that officer*)" to exercise that authority. *Id.* (emphasis added). Put differently, under section 3348(a)(2)(A), the key question is whether the statute makes the authority "exclusive" to the office in which it vests that authority and thereby limits an officer's ability to reassign it. *Stand Up for Cal.! v. U.S. Dep't of Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 711 (2022).

To determine whether a statute creates an exclusive grant of statutory authority, we simply read that statute. Under the subdelegation doctrine, "[w]hen a statute delegates authority to a federal officer or agency, subdelegation . . . is presumptively permissible absent affirmative evidence of a contrary congressional intent." *La. Forestry Ass'n*, 745 F.3d at 671 (first alteration in original) (quoting *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004)); *see Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 120-23 (1947); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1190 (10th Cir. 2014) (observing that "[o]ur

---

[7] Subdelegation is "the transfer of authority from an agency endowed with authority pursuant to congressional enactment to entities within or outside of the agency itself." *La. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 671 (3d Cir. 2014)

sibling circuits that have spoken on this issue are unanimous in permitting subdelegations to subordinates, even where the enabling statute is silent, so long as the enabling statute and its legislative history do not indicate a prohibition on subdelegation"). We see no reason to suspect that Congress intended for courts to approach such questions any differently when resolving them in the context of Vacancies Reform Act challenges. *See In re VistaCare Grp., LLC*, 678 F.3d 218, 226 (3d Cir. 2012) ("When Congress enacts legislation, it is presumed to act with knowledge of the existing law and judicial concepts." (internal quotation marks and citation omitted)). So, to ascertain whether a statutory duty constitutes a "function or duty" under section 3348(a)(2)(A) and, as a result, whether an official may ratify an exercise of that duty, we examine the text of the statute, considering also the presumption of subdelegability. If we read the statute's text to expressly bar subdelegation or mandate exclusivity, then the authority constitutes a "function or duty." If not, the statutory authority does not qualify as a "function or duty," and officials may ratify exercises of that authority under the Vacancies Reform Act.[8]

---

[8] We do not presume that courts should necessarily apply this same approach for regulatory functions or duties despite Congress's use of similar language in both function or duty definitions. *See* 5 U.S.C. § 3348(a)(2)(B). Even though courts generally employ the same tools of "statutory construction" when interpreting regulations, *Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113, 119-20 (3d Cir. 2021), courts have only recently considered whether they should read regulations to presumptively allow redelegation as they do when interpreting statutes, *see, e.g.*, *Stand Up for Cal.!*, 994 F.3d at 623

Despite section 3348(a)(2)(A)'s plain meaning, Kajmowicz resists this approach, arguing that, if a statute assigns a duty to a single office rather than multiple offices, then it does so exclusively. He would have us stress "the applicable officer (and only that officer)" and elide "required by statute to be performed by." 5 U.S.C. § 3348(a)(2)(A). But we cannot do so. *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (rejecting an interpretation that "runs afoul of the cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute" (internal quotation marks and citation omitted)). Instead, we must give effect to Congress's decision to define a "function or duty" in terms of what the statute requires, not what it permits. If we read an assignment of authority to one officer as prohibiting any other officer from exercising that authority, we would stand the subdelegation doctrine on its head—presuming statutory silence implies exclusivity. *See United States v. Mango*, 199 F.3d 85, 90 (2d Cir. 1999) ("Congress may mention a specific official only to make it clear that this official has a particular power rather than to exclude delegation to other officials." (citing *Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 132 F.3d 775, 782 (D.C. Cir. 1998))). By asking courts to consider whether the relevant statute "require[s] . . . the applicable officer (and only that officer)" to perform the duty at issue, Congress directed courts to read statutes silent on the question of delegation with the subdelegation doctrine in mind. In other words, we should conclude that a statute grants authority exclusively to an office only if the statute so states or is otherwise read, using the

---

(recognizing for the first time that the subdelegation doctrine's "presumption applies to regulations").

15

traditional principles of statutory interpretation, to foreclose further delegation of that authority.

When we review the National Firearms Act and the Gun Control Act of 1968, we see no express nor implicit restrictions on the Attorney General's ability to subdelegate his rulemaking authority to subordinates. *See* 26 U.S.C. § 7805(a); 18 U.S.C. § 926(a). Indeed, Kajmowicz concedes that the Attorney General can subdelegate this authority, and, in fact, the Attorney General subdelegated it to the Director of ATF, who has exercised this rulemaking authority since 2003. *See* 28 C.F.R. § 0.130(a)(1)-(2); Organization of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, 68 Fed. Reg. at 4926. Therefore, neither statute "required" the Attorney General "and only [the Attorney General]" to exercise that authority. 5 U.S.C. § 3348(a)(2)(A). And so, this rulemaking authority does not qualify as a "function or duty" of the Attorney General.[9]

B.

Losing on the text, Kajmowicz advances arguments rooted in the Vacancies Reform Act's purpose and legislative history. Yet, where, as here, the statute's language is unambiguous, our work is done. *Bostock v. Clayton Cnty.*, 140

---

[9] We note that our decision concerns only the particular rulemaking authority at issue. As a result, we do not decide whether authority made delegable under a general delegation statute, such as 28 U.S.C. § 510 (permitting the Attorney General to subdelegate any of the office's functions), would constitute a statutory function or duty under 5 U.S.C. § 3348(a)(2)(A).

S. Ct. 1731, 1749 (2020) (declining to consider legislative history when the statutory text was unambiguous). To the extent Kajmowicz insists that we must jettison section 3348's plain language to avoid an absurd result, we are unconvinced. *See Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020) (en banc) ("As long as Congress could have any conceivable justification for a result—even if the result carries negative consequences—that result cannot be absurd."). Though he claims that we risk defanging the Vacancies Reform Act, he must raise his policy concerns elsewhere. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002); *United States v. Safehouse*, 985 F.3d 225, 238 (3d Cir. 2021) ("The public-policy debate is important, but it is not one for courts.").

Still, we acknowledge that most statutes that confer authority will permit subdelegation, which means that many statutory functions and duties will be ratifiable under the Vacancies Reform Act. *See Stand Up for Cal.! v. U.S. Dep't of Interior*, 298 F. Supp. 3d 136, 137 (D.D.C. 2018) ("[I]n practice, there are very few duties that cannot be delegated to an 'acting' officeholder . . . or even another official who acts in the place of the principal pursuant to agency regulations or orders."), *aff'd*, 994 F.3d 616 (D.C. Cir. 2021); *see also Arthrex*, 35 F.4th at 1337 (noting that the scope of section 3348 is "vanishingly small"). Congress, however, can always recalibrate section 3348. If it wishes, it can bring statutory duties within section 3348(d)'s ambit by writing or rewriting those statutes to require only the named officer perform those duties. *See Stand Up for Cal.!*, 994 F.3d at 622.

Moreover, a broad reading of section 3348(d) would effectively cripple the operation of the federal government. *See* O'Connell, *supra*, at 631 (explaining that, under section

17

3348, "officials serving in violation of the [Vacancies Reform] Act can be treated more harshly than those operating unconstitutionally" as the Act prevents them from relying on "harmless error defense[s] or the de facto officer doctrine"); *see also Arthrex*, 35 F.4th at 1337 (explaining that a broad reading of "function or duty" would threaten to nullify thousands of patents and many *inter partes* review decisions when applied to the Director of the Patent and Trademark Office). Congress can impose that strong medicine if it wishes, but it has not done so in section 3348. Rather, it struck a balance between deterring the Executive Branch from violating the Vacancies Reform Act and ensuring the Branch could continue to function when it did overstep the Act's limits. *See Arthrex*, 35 F.4th at 1337 (noting that, even in the face of "disquieting" results, courts "can neither rewrite [section 3348] nor supplant Congress' judgment").

Finally, section 3348(d)(2)'s purported relationship to the D.C. Circuit's decision in *Doolin Security Savings Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998), provides no reason to look beyond the statute's plain meaning. The Vacancies Reform Act's legislative history suggests Congress wanted to "overturn" *Doolin*, S. Rep. No. 105-250, at 11 (1998), but "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Because Congress did not specify in section 3348's text that it intended to overrule *Doolin*, even if the language Congress chose was unsuccessful in achieving this end, we could not fix Congress's mistake. *See S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248, 259 (3d Cir. 2013).

18

Besides, section 3348's text ensures that no court could decide *Doolin* in the same way today. *Doolin* involved two Acting Directors of the Office of Thrift Supervision. 139 F.3d at 205. The first assumed this role after the Senate-confirmed director subdelegated all his authority then resigned. *Id.* This first Acting Director served about four years and initiated the agency action at issue in *Doolin*. *Id.* Then, following the first Acting Director's resignation, the President named a new Acting Director pursuant to his authority under the Vacancies Act. *Id.* The second Acting Director issued a final order in the agency action before he was replaced by a Senate-confirmed Director. *Id.* at 205-06. The court held that the second Acting Director's service was lawful, *id.* at 211, and it declined to resolve whether the first Acting Director's designation and four years of service were lawful because the second Acting Director effectively ratified the challenged action. *Id.* at 214-15.

*Doolin* principally concerned timing, not ratification. *See id.* at 206-11. Congress effectively overruled the timing portion of the court's decision by amending section 3346's language in the Vacancies Reform Act.[10] The Act also introduced new statutory language that addressed ratification. That, however, does not mean that Congress drafted section 3348 to restrict ratification as drastically as Kajmowicz would have it. The *Doolin* court presumed that a lawfully appointed

---

[10] In *Doolin*, the court held that the time limitation on an acting official's service began to run when that official took office. 139 F.3d at 208-09. The Vacancies Reform Act's statutory language effectively overrules that part of *Doolin* by clarifying that the time limitation begins to run "on the date the vacancy occurs." 5 U.S.C. § 3346(a)(1).

19

officer could ratify any action performed by an unlawfully serving acting predecessor. *See id.* at 213-214. In response, Congress superseded that proposition: under the Vacancies Reform Act, officials could no longer ratify all actions, only those that rested on exercises of delegable authority. *See* 5 U.S.C. § 3348. Thus, the Vacancies Reform Act requires no atextual gloss to overrule both parts of *Doolin*.

At bottom, Congress did not require that the Attorney General and only the Attorney General exercise the rulemaking authority assigned to him under the National Firearms Act and the Gun Control Act of 1968, so this authority does not qualify as one of the Attorney General's "function[s] or dut[ies]" under section 3348(a)(2)(A). As a result, even if Whitaker served as Acting Attorney General in violation of the Vacancies Reform Act, section 3348(d)(2) did not prohibit Attorney General Barr from ratifying Whitaker's promulgation of the Rule. Because this ratification cured any defects in the rule related to Whitaker's service, Kajmowicz's challenge to the Rule fails whether or not Whitaker's designation violated the Vacancies Reform Act or the Appointments Clause. *See Guedes*, 920 F.3d at 12.

IV.

Despite Attorney General Barr's valid ratification of the Rule, Kajmowicz invites us to still decide whether Whitaker served unlawfully as Acting Attorney General. He contends that, because the Government has not satisfied its burden under the voluntary cessation doctrine to show that the Executive Branch officials will not repeat the conduct he challenges, we should reach the merits of his claims even though Attorney General Barr sought to "moot" these claims by ratifying the Rule. Again, we disagree.

20

The voluntary cessation doctrine describes a special application of our mootness doctrine.[11] *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306-07 (3d Cir. 2020) (explaining that, rather than an exception, "[v]oluntary cessation is just a recurring situation in which courts are particularly skeptical of mootness arguments"). Under the doctrine, even though a case appears moot due to "a defendant's voluntary cessation of a challenged practice," we may still "determine the legality of [that] practice" aware that the defendant could "return to his old ways" if we were not to intervene. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted). In these circumstances, the defendant must "show[] that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" for us to dismiss the case as moot. *Id.* at 190; *see Hartnett*, 963 F.3d at 306-07.

The voluntary cessation doctrine, however, is irrelevant here: Attorney General Barr's ratification did not "moot" Kajmowicz's case. As the D.C. Circuit explained when it considered this same argument in response to the same

---

[11] "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interested in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks and citation omitted). In other words, once it becomes "impossible for a court to grant any effectual relief whatever to the prevailing party," then we no longer have jurisdiction and must dismiss the case as moot. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (internal quotation marks and citation omitted).

21

ratification, "a properly appointed official's ratification of an allegedly improper official's prior action, rather than mooting a claim, resolves the claim on the merits by remedy[ing] [the] defect (if any) from the initial appointment." *Guedes*, 920 F.3d at 13 (alterations in original) (internal quotation marks and citation omitted). Unsurprisingly, the same is true here. Attorney General Barr's "ratification purge[d] any residual taint or prejudice left over from [Whitaker's] allegedly invalid appointment" and thus "resolv[ed] the merits of [Kajmowicz's] claim." *Id.* Simply put, the ratification rendered the legal theory underpinning Kajmowicz's challenge meritless without mooting his case; it did not "eliminate [his] personal stake in the outcome of [the] suit [n]or prevent a court from being able to grant the requested relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (internal quotation marks and citation omitted). Kajmowicz doubtless could still challenge the Rule on other grounds if he so wished. *See Guedes*, 920 F.3d at 17, 32 (considering additional challenges after determining that the rule's ratification resolved the merits of an Appointments Clause challenge).

Despite Kajmowicz's arguments to the contrary, Appointments Clause challenges like his do not merit special treatment. Although an Appointments Clause violation provides grounds to invalidate an unreviewed agency action, once a lawfully appointed official reconsiders that action, the plaintiff must establish that this violation continues to taint the action for a court to set that action aside. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 123-24 (D.C. Cir. 2015). The D.C. Circuit recognized an exception to this rule in *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000), where the hierarchical nature of agency review meant that the plaintiff's challenge to an administrative law judge's

22

appointment would always be cured before it reached an Article III court. *Intercollegiate Broad.*, 796 F.3d at 124 (citing *Landry*, 204 F.3d at 1130-31). Kajmowicz does not face that catch-22—the independent actions of several governmental actors, not the structures of agency review, have frustrated his attempts to seek judicial intervention. *See Guedes*, 920 F.3d at 13-14 ("The succession of a Presidentially appointed and Senate-confirmed Attorney General does not remotely implicate the *Landry* scenario."). So we face no obligation to determine whether Whitaker's service as Acting Attorney General violated the Appointments Clause. *See Moose Jooce*, 981 F.3d at 28-31.

What is more, the principles of constitutional avoidance and judicial restraint guide us not to consider this question. These principles counsel courts to avoid deciding issues, especially constitutional ones, when they need not do so in order to resolve cases. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). Although Kajmowicz disputes the legality of Whitaker's service as Acting Attorney General, this issue does not affect his challenge to the Rule, so we need not and therefore will not address it no matter how novel, significant, or interesting it may be.

V.

Kajmowicz challenged the Rule on the grounds that Whitaker lacked the authority to issue it. But, because Attorney General Barr effectively ratified the Rule, and the Vacancies Reform Act did not prohibit this ratification, the Rule will stand even if Whitaker may have served as Acting

23

Attorney General in violation of the Vacancies Reform Act or the Appointments Clause. Thus, we affirm the District Court's dismissal of Kajmowicz's complaint for failure to state a claim for which relief can be granted.

FISHER, *Circuit Judge*, concurring.

I join Judge RENDELL's well-reasoned majority opinion with one exception. I read the relevant statutory text as imposing an additional requirement before we may conclude something is not a "function or duty" of a particular office under the Federal Vacancies Reform Act ("FVRA"). Specifically, the authority in question, in addition to being delegable, must actually have been delegated. Because this requirement is clearly met in the case before us, I agree we should affirm.

Though the Plaintiff does not prevail, there is good reason to stop short of accepting the full scope of the Government's reading. According to the Government, the anti-ratification provision at 5 U.S.C. § 3348 does not reach functions or duties that "*may* be vested in multiple officers." Appellee's Br. at 13 (emphasis added). Rather, the Government argues, it extends only to "nondelegable duties." *Id.* (quoting *Guedes v. ATF*, 920 F.3d 1, 12 (D.C. Cir. 2019) (per curiam)). The Government places particular emphasis on the existence of the Attorney General's general delegation authority at 28 U.S.C. § 510. The problem with the Government's interpretation is that it creates a logical conundrum. From a plain text perspective, only the Attorney General may delegate authority under 28 U.S.C. § 510. Otherwise, lower-level officials could unilaterally exercise functions or duties that Congress confided in a department head. This suggests that if the Attorney General has not actually delegated the authority to undertake a particular action, then statutory authority requires the action to be

1

performed by only the Attorney General.[1]

The following hypothetical helps illustrate this point. Assume the Attorney General had never delegated the authority to promulgate the gun regulations at issue here prior to the vacancy arising. If that were the case, then no other officer or entity within the Department of Justice could issue the bump-stock regulation. Further, an Acting Attorney General could not delegate the authority to issue the regulation because only the Attorney General may delegate the Attorney General's functions or duties. *See* 28 U.S.C. § 510. Any attempted delegation would thus have no force or effect under 5 U.S.C. § 3348(d)(1) because the delegation function is an exclusive "function or duty" of the Attorney General within the meaning of § 3348(a). In such a scenario, the relevant statutes would therefore require the Attorney General, and only the Attorney General, to be the officer to issue the rule. *See id.* § 3348(a).

Thus, the Government's suggestion that we look to whether a function or duty is delegable under a general delegation statute is insufficient because—at least under 28 U.S.C. § 510 and similar provisions—the authority to delegate functions or duties is itself nondelegable. Fortunately, this hypothetical situation is not before us today because the Attorney General has long delegated to the ATF Director the authority to issue rules like the bump-stock regulation.

Nonetheless, considering this hypothetical reveals that

---

[1] The result is materially the same under the subdelegation doctrine. That doctrine presumptively allows officers to delegate their statutory functions or duties to subordinate officers, *see La. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Lab.,* 745 F.3d 653, 671 (3d Cir. 2014), but does not permit them to assume the duties of superior officers.

the best reading of the FVRA's anti-ratification provision requires us to assess both whether a function or duty is delegable and whether it has actually been delegated. Reading the relevant statutes together, the Attorney General "shall prescribe all needful rules and regulations," but also "may" authorize other officers to perform the functions of the Attorney General. *See* 26 U.S.C. §§ 7801(a)(2)(A)(ii), 7805(a); 28 U.S.C. § 510. In turn, the anti-ratification provision only applies to a "function or duty" that is "established by statute" and "required by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A), (d). A plain reading of these statutory provisions suggests a straightforward inquiry when a vacancy arises: can another official besides the Attorney General perform the action in question under statutory authority? If the answer is yes, then the relevant statutes do not require the action to be performed by only the Attorney General. If the answer is no, then they require only the Attorney General to perform the action.

Here, it is undisputed that at least one other officer—the ATF Director—could also have promulgated the bump-stock rule. *See* Appellant's Reply Br. at 26 ("But of course the ATF Director retained that authority [to issue the bump-stock rule]."). The Attorney General delegated his functions under the Gun Control Act and the National Firearms Act to the ATF Director when the ATF was transferred from the Treasury Department to the Justice Department. 28 C.F.R. § 0.130(a)(1), (2); Organization of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, 68 Fed. Reg. 4923, 4926 (Jan. 31, 2003). This delegation was accomplished under and cited to 28 U.S.C. § 510. Thus, it suffices here to observe that the ATF Director (or a properly designated Acting ATF Director under the FVRA) could have issued the bump-stock rule, as authorized under 28 U.S.C. § 510, to conclude the Attorney General was not the

3

only officer "required" to undertake the relevant action.

It may be objected that asking whether a function or duty has actually been delegated—instead of just asking whether it "may be delegated"—allows the functions or duties that must be performed by "only" the Attorney General to fluctuate based on the use of delegation authorities. However, this is just the natural consequence of the wide discretion that Congress has given the Attorney General under 28 U.S.C. § 510. *See also Stand Up for California! v. United States Dep't of the Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021) ("Should Congress remain silent . . . the FVRA provides the Executive Branch with leeway to set out which functions or duties are exclusive and which are not." (citing, *inter alia*, 5 U.S.C. § 3348(a)(2)(A))). The FVRA contemplates that an officer's portfolio of exclusive functions or duties may fluctuate given the statute's use a 180-day "lookback" provision to define regulatory "functions or duties." 5 U.S.C. § 3348(a)(2)(B)(ii); *see L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 33 (D.D.C. 2020) ("[T]he lookback provision contemplates that agencies may and will use their organic authorities to issue rules reassigning duties . . . ."). The absence of the lookback provision in the definition of statutory functions or duties means only that the relevant statute establishing the function or duty need not have been in effect sometime during the 180 days before the vacancy. It does not disturb the conclusion that what constitutes a statutory function or duty may vary based on an officer's use of statutory delegation authorities.

Ultimately, the practical result of this reading may be very similar to the one presented by the Government because department heads and other high-level officers frequently subdelegate all their delegable functions and duties as a matter of course. Nonetheless, I read the statutory text to require such officers to have actually delegated the authority in question

4

before we may conclude it is not a "function or duty" under the FVRA.