# United States Court of Appeals
## For the First Circuit

No. 23-2062

MEREDITH O'NEIL; JESSICA SVEDINE; DEANNA CORBY; ROBERTO SILVA,

Plaintiffs, Appellants,

JENNA ROCCO; NICK ROCCO,

Plaintiffs,

v.

CANTON POLICE DEPARTMENT; TOWN OF CANTON MASSACHUSETTS; HELENA RAFFERTY, as Chief of the Canton Police Department and in her personal capacity; ROBERT ZEPF; MICHAEL CHIN; ANTHONY PASCARELLI; JOSEPH SILVASY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Gelpí, Lynch, and Montecalvo,
Circuit Judges.

Marc J. Randazza, with whom Jay M. Wolman and Randazza Legal Group, PLLC were on brief, for appellant.
Douglas I. Louison, with whom Joseph A. Mongiardo and Louison, Costello, Condon & Pfaff, LLP were on brief, for appellee.

September 19, 2024

**LYNCH**, **Circuit Judge**.  On November 7, 2023, appellants Meredith O'Neil, Jessica Svedine, Deanna Corby, and Roberto Silva sued various Canton, Massachusetts town and police officials seeking declaratory and injunctive relief prohibiting the enforcement of the Massachusetts witness intimidation statutes, Mass. Gen. Laws ch. 268 §§ 13A and 13B, bringing both facial and as-applied attacks under the First Amendment.  The complaint alleged that the appellants feared prosecution for their actions during a November 5, 2023 protest and that their speech would be chilled as to a planned protest to take place on November 12, 2023.

On the day after they filed suit, the appellants moved for emergency relief, asking that the "[d]efendants' unconstitutional acts . . . be immediately enjoined by temporary restraining order, to be converted to a preliminary injunction following a hearing thereon."  Defendants opposed the motion and the district court denied the motion two days later, for the reasons explained below.

Appellants took this appeal on December 10, 2023 from the denial of their emergency motion.  We dismiss this appeal, which concerns only the denial of emergency relief, as moot.  When events have transpired "to render a court opinion merely advisory, Article III considerations require dismissal of the case."  Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003).

## I.

The background for this appeal is a separate state criminal prosecution brought by the Commonwealth of Massachusetts not against these appellants but against defendant Karen Read, charging her with the murder of John O'Keefe, vehicular manslaughter, and leaving the scene of personal injury or death. Read's state criminal court trial took place in April 2024 and ended in a mistrial. At that trial, Chris Albert, among other witnesses, testified and was cross-examined. A new state court trial, apparently on the same charges, is scheduled for January 27, 2025.[1]

We describe the events in chronological order. We start with the pleadings in appellants'[2] federal court complaint: on November 5, 2023, before Read's criminal trial, the appellants and others gathered "across the street from Chris Albert's business, D&E Pizza" to "protest against what appear[ed] to be perjury to them."[3] The appellants held signs on November 5 with slogans such as "Free Karen Reed [sic]" and "Justice." Four Canton police

---

[1] Read's legal team recently filed a motion to dismiss two of the three charges on double jeopardy grounds, which the state court denied. Read's legal team has appealed that denial.

[2] Jenna Rocco and Nick Rocco were also named as plaintiffs and have not joined this appeal.

[3] In their opening brief before this court, the appellants further characterized their protest as being "[to] encourage[] Albert to speak the truth, and to not bow to pressure to lie about what actually occurred on the night of O'Keefe's death."

officers drove by several times and then "stopped and informed the protestors that they were not permitted to protest there, because if the protest could be seen by Chris Albert, they would deem it to be 'witness intimidation' and [appellants] would be arrested," and handed the appellants a copy of Mass. Gen. Laws ch. 268 § 13A, which states:

> Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the commonwealth, or in or near a building or residence occupied or used by such judge, juror, witness, or court officer, shall be punished by a fine of not more than five thousand dollars or by imprisonment for not more than one year, or both.

> Nothing in this section shall interfere with or prevent the exercise by any court of the commonwealth of its power to punish for contempt.

Appellants do not allege that the officers gave them a copy of Mass. Gen. Laws ch. 268 § 13B, the other Massachusetts witness intimidation statute that the appellants challenge. The statute provides (in relevant part) criminal penalties for:

> Whoever willfully, either directly or indirectly . . . misleads, intimidates or harasses another person who is a: (A) witness or potential witness . . . with the intent to or with reckless disregard for the fact that it may: (1) impede, obstruct, delay, prevent or otherwise interfere with . . . a trial or other criminal proceeding of any type . . . or (2) punish, harm, or otherwise retaliate

against any such person described in this section for such person or such person's family member's participation in any of the proceedings described in this section[.]

After the November 5 protests but before the allegedly planned November 12 protest, the appellants filed the emergency motion. The district court acted promptly and ruled on the emergency motion on November 10, 2023, denying relief. First, the court assumed that on the pleadings the plaintiffs had standing to seek relief.[4]

The court considered "[1] the movant[s'] likelihood of success on the merits of [their] claims; [2] whether and to what extent the movant[s] will suffer irreparable harm if the injunction is withheld; [3] the balance of hardships as between the parties; and [4] the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)). The court held that the plaintiffs had not demonstrated a

---

[4] "It is not clear that [these] circumstances," the court wrote, "show a sufficiently imminent threat of arrest as to both §§ 13A and 13B, particularly where Plaintiffs make no allegations regarding their individual conduct during the November 5, 2023 protest or their conduct during the planned November 12, 2023 protest." However, the court noted that "there has been no disavowal of Defendants not to charge Plaintiffs or that their interpretation of [the] statute is unreasonable[,]" so "at this early juncture and on the factual record before it, the Court assumes that Plaintiffs have met the 'extremely low' bar in this context[.]"

reasonable likelihood of success on the merits for any of their claims. For the as-applied challenge, the court, citing relevant cases, determined that "most courts have concluded that witness intimidation statutes such as the one at issue in this case are content-based and subject to strict scrutiny when applied to expressive conduct, because they limit speech related to a pending court proceeding but not speech on other subjects." The court reasoned that the Massachusetts witness intimidation statutes satisfied strict scrutiny in that they "serve [] compelling interests in protecting the orderly administration of justice" and were narrowly tailored to serve that interest "[e]ven as applied to Plaintiffs." "As alleged," the court wrote, "Plaintiffs did not gather in any other public location, but outside of Albert's place of business. There is nothing in the statute, or as applied to Plaintiffs, that would prohibit their gathering to do the same in other locations." The court rejected the appellants' associated retaliation claim because they had not shown likelihood of success on the merits, in light of its conclusion that the statutes were likely constitutional as applied.

The court then determined that the plaintiffs also had not shown they faced a risk of irreparable harm. Appellants represented that they decided not to move forward with a November 12 planned protest, and "they have provided no details regarding the planned protest and why such protest would inevitably be viewed

by law enforcement as violative of §§ 13A, 13B." The district court noted that the "Defendants are not alleged to have issued any prohibition on protests related to the Read prosecution or to have halted any peaceful, non-threatening protests regarding the Read prosecution[,]" and "it is not clear that any exercise of free speech has been chilled where Plaintiffs have other public forum[s] to express their views, particularly given the widespread news coverage and public interest that has already been generated regarding [the] same."

The district court reasoned that the "balance of harms between the parties and the consideration of the public interest also weigh against the injunctive relief that Plaintiffs seek." The court held that the "interest of the Plaintiffs in obtaining the injunctive relief weighs against the Defendants' interest in enforcement of law in the Town, and consideration of the public interest in ensuring the administration of justice, including interference with witnesses."

After the denial of emergency relief, the appellants did not protest on November 12, 2023, and from the record before us have not protested since. On November 22, three of the four appellants -- O'Neil, Corby, and Silva -- were charged with violations of §§ 13A and 13B based on their November 5, 2023

protest, and on August 2, 2024, those charges were dismissed by the state court for lack of probable cause.[5]

## II.

In light of intervening events, this court on August 7, 2024 ordered the parties to address in filings the issue of whether this appeal was moot. In reply, each party filed supplemental briefs and statements made under the pains and penalties of perjury, as permitted by the order.[6] Each appellant alleged generally an intent to "continue protesting for [their] belief

---

[5] Svedine was apparently not among the group of protesters charged for the November 5 incident.

[6] Because of the chronology of events those documents and statements were not before the district court. As exhibits to appellees' supplemental appellate briefing, Canton Police Department documents show that O'Neil carried a sign reading "Colin Albert was inside the house." Helena Rafferty, Canton Chief of Police, stated that "[t]here are video recordings indicating certain individuals from the protest did not remain across the street and had in fact made their way in front of D&E Pizza & Subs. Signage observed by officers also included 'Colin Albert was in the house' and slogans recorded on audio included 'Chris Albert killed a man.'" Chief of Police Rafferty also stated, inter alia, that:

1. "It is <u>not</u> the policy or prerogative of the Canton Police Department to charge an individual for witness intimidation under [§ 13A or § 13B] merely because she holds a sign that says 'JUSTICE' within eyesight of a witness."

2. "Thanks to cooperation with protest organizers, numerous protests have been held outside the Norfolk County District Attorney's office . . . and in front of the Canton Police Department . . . without violation of the law."

- 8 -

that Karen Read is being framed" and that "[o]nce an injunction enters, [they] intend to protest."

This court then heard oral argument on September 11, 2024 on this appeal, including on the issues of mootness.

**III.**

Where "[t]he posture of the case has changed in significant ways since the plaintiff[s] initially made [their] motion for a preliminary injunction," the justiciability of an interlocutory appeal from the denial of that motion is "called into question." Matos v. Clinton Sch. Dist., 367 F.3d 68, 72 (1st Cir. 2004). Article III limits federal court jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. The intertwined doctrines of standing and mootness help define that limitation, and courts "review[] these threshold questions de novo." N.H. Lottery Comm'n v. Rosen, 986 F.3d 38, 49 (1st Cir. 2021) (citing Mangual, 317 F.3d at 56).

There is no question the posture of the case has now changed in significant and material ways: Chris Albert, the alleged object of appellants' activities, has now testified, and the Read trial resulted in a mistrial. Significantly, the state court has dismissed the charges against the plaintiffs under the statutes at issue and has determined that no probable cause for violation of the witness intimidation statutes existed on the facts of the November 5 protest. If there are any future protests, the present

- 9 -

contours of such protests are purely hypothetical. The mootness doctrine is based in the Article III jurisdictional requirements. <u>Moore</u> v. <u>Harper</u>, 600 U.S. 1, 14 (2023). Mootness occurs when subsequent events unfold such that standing no longer exists. <u>See</u> <u>Mangual</u>, 317 F.3d at 60 ("The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'") (quoting <u>Steffel</u> v. <u>Thompson</u>, 415 U.S. 452, 460 n.10 (1974)). Mootness can be viewed as "the doctrine of standing set in a time frame." <u>Id.</u> (quoting <u>United States Parole Comm'n</u> v. <u>Geraghty</u>, 445 U.S. 388, 397 (1980)).

To meet standing requirements, a plaintiff must establish "an injury in fact caused by the defendant and redressable by a court order." <u>United States</u> v. <u>Texas</u>, 599 U.S. 670, 676 (2023). An injury in fact must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." <u>Susan B. Anthony List</u> ("<u>SBA List</u>") v. <u>Driehaus</u>, 573 U.S. 149, 158 (2014) (quoting <u>Lujan</u> v. <u>Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)). The witness intimidation charges as to the November 5 activities of appellants were dismissed for lack of probable cause, thus obviating any need for the court to enjoin behavior related to that particular conduct. That moots any claims for emergency relief as to those charges. <u>See</u> <u>Ramirez</u> v. <u>Sanchez</u> <u>Ramos</u>, 438 F.3d 92, 100 (1st Cir. 2006) (holding that the "'want

of probable cause' determination eradicated the threatened injury . . . . No more is exigible to establish mootness.").  There is simply "no ongoing conduct left for the court to enjoin."[7]  Am. C. L. Union of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 53 (1st Cir. 2013); see also Matos, 367 F.3d at 72 (holding that where the event that the plaintiff sought to enjoin had already occurred, "[t]his court lacks the power to turn back the clock and, accordingly, . . . the appeal is moot.").

As to the appellants' general allegations made to this court of an intention to protest in a manner similar to the November 5 protest despite the fact that Chris Albert's testimony has taken place and is a matter of record, these statements of intention do not show any likelihood of threatened prosecution.[8]

To establish standing for these pre-enforcement challenges to possible applications to the appellants of these statutes for undefined activity, appellants have not shown a

---

[7] Rafferty's affidavit notes that "[t]he Canton Police Department is currently reviewing its ability to appeal [the Stoughton District Court's findings of lack of probable cause]." Nonetheless, the appeal before us from the emergency motion remains moot.  The emergency motion did not include a request to enjoin ongoing prosecutions; indeed, such a motion would implicate Younger v. Harris, which establishes that federal courts may not "stay or enjoin pending state court proceedings" "except under special circumstances."  401 U.S. 37, 41 (1971).

[8] The appellants have also not alleged that Canton police would enforce the witness intimidation statutes in the future in a way that defies the state court's findings that no probable cause existed as to the appellants' conduct at the November 5 protest.

likelihood of arrest and prosecution, and so fail to show that "there exists a credible threat of prosecution." SBA List, 573 U.S. at 159 (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)). Standing exists only when "the threatened enforcement [is] sufficiently imminent."[9] SBA List, 573 U.S. at 159; see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 402 (2013) (holding no standing existed where alleged injury was "based on hypothetical future harm that is not certainly impending."). The threatened enforcement must also be sufficiently specific: the plaintiff must allege a "live controversy" about "an actual or imminent application of [the challenged statute] sufficient to present the constitutional issues in 'clean-cut and concrete form.'" Renne v. Geary, 501 U.S. 312, 320-22 (1991) (quoting Rescue Army v. Mun. Ct. of L.A., 331 U.S. 549, 584 (1947)). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of

---

[9] In Susan B. Anthony List v. Driehaus, the petitioners had adequately "alleged a credible threat of enforcement" and established standing only because (in relevant part) the "petitioners ha[d] pleaded specific statements they intend to make in future election cycles" that could be the subject of future enforcement. 572 U.S. at 161. In contrast, the appellants here have not pleaded the specific speech that could be the target of future enforcement or the context or circumstances and allege only a general intention to protest. Moreover, in SBA List, a state commission charged with enforcing the challenged statute had "already found probable cause to believe that SBA violated the statute when it stated . . . the same sort of statement petitioners plan to disseminate in the future." Id. at 162. Here, the state has done the opposite and determined that no probable cause existed for apellants' previous protest.

specific present objective harm or a threat of specific future harm." Blum v. Holder, 744 F.3d 790, 796 (1st Cir. 2014) (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972)).[10]

For the foregoing reasons, this appeal from the denial of the motion for emergency relief is **dismissed** as moot. We **remand** to the district court for such further proceedings as are appropriate, noting that the case before the district court has not been dismissed and that no discovery has yet taken place.

---

[10] The appellees moved to strike various exhibits that the appellants attached to supplemental briefing before this court. Even considering those exhibits, they are simply insufficient to avoid mootness.