**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3007

_____

ERICH SMITH; FRANK E. GARWOOD, JR.; MARIBEL LORENZO;
DR. DANIEL DONOFRIO

v.

PRESIDENT UNITED STATES OF AMERICA, in his official capacity and any
successor to the office of the president; ATTORNEY GENERAL UNITED STATES OF
AMERICA; COMMISSIONER SOCIAL SECURITY; UNITED STATES
GOVERNMENT; FICTITIOUS FEDERAL AGENCIES 1-10

Dr. Daniel Donofrio; Maribel Lorenzo,
                                                    Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:21-cv-19457)
District Judge: Honorable Christine P. O'Hearn

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2025

Before:  RESTREPO, McKEE, and RENDELL, *Circuit Judges*

(Opinion filed: December 8, 2025)

_____

OPINION[*]

_____

_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

On September 9, 2021, President Biden issued two executive orders requiring certain federal employees and contractors to be vaccinated against COVID-19 (the "Mandates").[1] Three federal employees[2] and one federal contractor[3] filed suit claiming that the Mandates violated their Fifth Amendment rights to privacy and equal protection under the law, and sought declaratory and injunctive relief. The District Court denied their motion for preliminary injunction. On May 9, 2023, while their appeal was pending, President Biden revoked the Mandates.[4] We held the appeal was moot. On remand, the District Court held the entire case was moot and granted Defendants' motion to dismiss; this appeal followed. For the reasons that follow, we will affirm the District Court's order dismissing this case and deny Appellants' request for vacatur of the District Court's preliminary injunction decision.[5]

**I.**[6]

"The Constitution limits the power of the federal judiciary to the resolution of 'cases and controversies.'"[7] Thus, federal courts may only consider suits "if they present

---

[1] Executive Order 14042 applied to federal contractors. Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sept. 14, 2021). Executive Order 14043 applied to federal employees. Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 14, 2021).

[2] Erich Smith, Frank E. Garwood, Jr., and Daniel Donofrio are federal employees who were subject to Executive Order 14043.

[3] Maribel Lorenzo is a federal contractor who was subject to Executive Order 14042.

[4] Exec. Order No. 14099, 88 Fed. Reg. 30891 (May 15, 2023).

[5] We have jurisdiction pursuant to 28 U.S.C. § 1291.

[6] Our standard of review for questions of mootness is plenary. *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly*, 815 F.2d 912, 914 (3d Cir. 1987).

[7] *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001) (citing U.S. Const. art. III, § 2, cl. 1).

live disputes, ones in which both sides have a personal stake."[8] "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."[9] Accordingly, "[i]f it is impossible for us to grant 'any effectual relief whatever to the prevailing party,' then the case is moot."[10] A significant burden rests on the party claiming mootness to establish that there is no longer a live dispute.[11]

We have previously held that when COVID-19 orders expired or were rescinded that the plaintiffs' claims for declaratory and injunctive relief became moot.[12] We agree with the District Court that Appellants' challenge to the COVID-19 vaccine Mandates is moot because there is no effectual relief from the now-rescinded Mandates that we can provide.[13] Appellants assert that in addition to requiring vaccination, the Mandates also

---

[8] *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020).
[9] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).
[10] *Clark v. Governor of New Jersey*, 53 F.4th 769, 775 (3d Cir. 2022) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)).
[11] *Hartnett*, 963 F.3d at 305–06.
[12] *See Clark*, 53 F.4th at 776 (holding that the case was "facially moot" because the relevant parts of the orders limiting in-person gatherings had been rescinded and "there was no effectual relief whatsoever" that could be granted (citation modified)); *Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 229–30 (3d Cir. 2021) (holding that the case was moot because the challenged stay-at-home, business closure, and congregation limits in secular settings orders had expired and there was "no relief that this Court c[ould] grant concerning them").
[13] *Smith v. President United States*, No. 1:21-cv-19457, 2024 WL 4315257, at *3 (D.N.J. Sept. 26, 2024) ("The Mandates no longer exist and declaring them unconstitutional and/or enjoining them now would not provide Plaintiffs with any cognizable relief."). "Our sister circuits have also held that challenges to COVID-19 vaccination requirements become moot when those requirements are rescinded." *Lowe v. Gagné-Holmes*, 126 F.4th 747, 755 (1st Cir.), *cert. denied sub nom. Lowe v. Gagne-Holmes*, 145 S. Ct. 2795 (2025) (collecting cases).

required them to disclose private medical information. They argue we can still provide them with meaningful relief by declaring the Mandates unconstitutional and ordering Appellees to provide "an accounting of what happened to their private information, proof it has been destroyed, and ensuring personnel records do not reflect their medical information or non-compliance with the mandate."[14]

Appellants rely on *Church of Scientology of California v. United States*, 506 U.S. 9 (1992), to argue that the case is not moot. In *Church of Scientology*, the IRS filed a petition to enforce production of tape recordings between officials of the Church of Scientology and their attorneys.[15] The Church of Scientology opposed production based on attorney-client privilege.[16] The district court enforced production of the tapes, and while the appeal was pending, the IRS received copies of the tapes.[17] As a result, the court of appeals dismissed the appeal as moot.[18] The Supreme Court reversed, explaining that even though the tapes had already been produced, a court could still provide the Church of Scientology with "a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy [wa]s sufficient to prevent th[e] case from being moot."[19] Appellants contend that, as in *Church of Scientology*, we "can provide [them] with relief by allowing them to

---

[14] Opening Br. 9.
[15] *Church of Scientology*, 506 U.S. at 10–11.
[16] *Id.* at 11.
[17] *Id.*
[18] *Id.* at 12.
[19] *Id.* at 13.

discover how their private information was handled and restoring them as near as possible to their privacy."[20]

Regardless of the holding in *Church of Scientology*, we agree with the District Court that we cannot provide this form of relief to Appellants because their operative complaint is devoid of any factual allegations that they disclosed private medical information to their employers.[21] Appellants argue that a declaration filed at the behest of the District Court serves as evidence that they disclosed private medical information to their employers. The declaration, however, only states that Appellants filed, or attempted to file, a request for an exception to the vaccine requirement. It does not aver that they provided any medical information with their requests.

Perhaps recognizing this deficiency in their complaint, Appellants argue that they "could initiate new litigation concerning the government's retention of that information

---

[20] Opening Br. 10.

[21] *See Smith*, 2024 WL 4315257, at *5 (finding "Plaintiffs did not assert any factual allegations . . . in the Third Amended Complaint" to support their argument that they were entitled to relief based on their disclosure of private medical information, and concluding that it would "not accept these conclusory allegations—not raised in the pleadings—as true."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). While we agree with the District Court's conclusion, we also affirm on the independent basis that Appellants failed to preserve this argument because they did not address the District Court's holding on this issue in their opening brief. We have repeatedly recognized "that an appellant's opening brief must set forth and address each argument the appellant wishes to pursue in an appeal." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017). "As a result, we have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing." *Id.*

and it would not be moot."[22] While they potentially could bring a new case that would entitle them to an accounting of their medical information, we cannot provide such relief in this case because they have not alleged facts or provided evidence establishing that Plaintiffs disclosed private medical information to their employers.[23] Based on the facts that have been alleged, we can provide no effectual relief because the vaccine Mandates have been rescinded. The case is moot. Nonetheless, Appellants argue that exceptions to mootness apply.

## II.

Appellants contend that the doctrine of voluntary cessation applies, and the Mandates are capable of repetition yet evading review.

"[O]ne 'recurring situation' in which we are reluctant to dismiss a case as nonjusticiable—despite the absence of ongoing conduct to enjoin—occurs where the defendant claims the matter has become moot owing to his voluntary cessation of the challenged action."[24] Voluntary cessation of a challenged action will only moot a case if "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[25] The defendant bears a heavy burden of showing there is not a reasonable

---

[22] Opening Br. 9.

[23] Appellees also argue that we cannot provide this relief because Appellants did not request it in the operative complaint. "As long as the plaintiffs have stated a claim for relief, it is the court's obligation to grant the relief to which the prevailing party is entitled whether it has been specifically demanded or not." *Kirby v. U.S. Gov't, Dep't of Hous. & Urb. Dev.*, 745 F.2d 204, 207 (3d Cir. 1984). The problem here is that Appellants have not stated a claim for such relief.

[24] *Clark*, 53 F.4th at 775 (quoting *Hartnett*, 963 F.3d at 306–07).

[25] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

likelihood of recurrence.[26] The focus is on "whether the *same legal controversy* will recur."[27]

In *Clark*, New Jersey-based Christian congregations challenged the Governor's executive order that limited gatherings to ten or fewer people and contained exceptions for certain secular activities but not religious worship.[28] While the order had been rescinded more than two years prior, we examined whether the doctrine of voluntary cessation prevented mootness.[29] In determining whether there was a reasonable likelihood of recurrence, we explained, "we need not conclude it is likely that the *exact same* restrictions contained in [the executive order] will return. At the same time, it is not as though the chance of *any* future COVID-related restrictions on Appellants' religious exercise will do."[30] We clarified that the chance of recurrence was based on two factors:

> (1) whether the same precise situation—the pandemic such as it presented itself in 2020 and 2021—will occur again; and (2) whether the Governor will respond to that situation by imposing restrictions similar enough to those he imposed in 2020 and 2021, such that it presents "substantially the same legal controversy as the one presented" here.[31]

We held that it was "absolutely clear" that neither factor was reasonably likely to recur.[32] We found it "hard to imagine that we could once again face anything quite like what confronted us then," or that the Governor would respond by imposing "similar future

---

[26] *Id.*
[27] *Clark*, 53 F.4th at 777–78 (emphasis added).
[28] *Id.* at 771–72.
[29] *Id.* at 776–81.
[30] *Id.* at 777.
[31] *Id.* at 778 (quoting *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022)).
[32] *Id.*

gathering restrictions," especially since his motivation for eliminating gathering restrictions "was unrelated to the relevant litigation."[33] "Finally, even assuming a reasonable likelihood of *some* COVID-based gathering restriction returning," we found it "implausible that a challenge to that restriction would constitute the *same legal controversy* as the one before us now."[34]

Appellants do not contend that it is likely that the COVID-19 pandemic will recur in the same fashion it did in 2021 to 2023 when the Mandates were in place nor that the government will impose similar COVID-19 vaccine mandates. Rather, they contend that "the legal controversy is whether the President has the authority to mandate federal workers and private employees to undergo a medical procedure through these mechanisms, so the exact same factual conditions do not need to arise for this legal controversy to recur."[35] However, the controversy they propose is not "the *same legal controversy* as the one before us now."[36] *Clark* instructs us that we must assess: "(1) whether the same precise situation—the pandemic such as it presented itself in [2021 to 2023]—will occur again; and (2) whether the [President] will respond to that situation by imposing [vaccine mandates] similar enough to those he imposed in [2021 to 2023]."[37] It is "hard to imagine that we could once again face anything quite like what confronted us

---

[33] *Id.* at 778–79.

[34] *Id.* at 781; *see also Lowe*, 126 F.4th at 756 (holding that the voluntary cessation exception to mootness did not apply because "it is extremely unlikely that the risks presented by any future variation in the SARS-CoV-2 virus would require the reinstatement of the same or an equivalent vaccine mandate").

[35] Opening Br. 14–15.

[36] *Clark*, 53 F.4th at 781.

[37] *Id.* at 778 (quoting *Resurrection*, 35 F.4th at 528).

8

then. Moreover, the public health outlook has changed dramatically since the[n] . . . . The accumulation of those changed circumstances thus make the return of the same pandemic and the same [vaccine Mandates] unlikely."[38] Appellants argue that the Mandates will likely recur based on the policies of former President Biden; however, the actions of the President indicate no likelihood of any reinstatement of vaccine mandates.[39] Moreover, the decision to rescind the Mandates over two years ago was not the result of litigation but rather the result of changed circumstances.[40] Since their rescission there have been no indications that the government intends to renew the vaccine Mandates. The voluntary cessation exception to mootness does not apply because it is absolutely clear that the same legal controversy could not reasonably be expected to recur.[41]

---

[38] *Id.*

[39] *See, e.g.*, Keeping Education Accessible and Ending COVID-19 Vaccine Mandates, Exec. Order No. 14214, 90 Fed. Reg. 9949 (Feb. 20, 2025) ("Some school districts and universities continue to coerce children and young adults into taking the COVID–19 vaccine by conditioning their education on it . . . . Parents and young adults should be empowered with accurate data regarding the remote risks of serious illness associated with COVID–19 . . . and left free to make their own decisions accordingly.").

[40] *See Hartnett*, 963 F.3d at 306 ("[T]he defendant's reason for changing its behavior is often probative of whether it is likely to change its behavior again."); *Clark*, 53 F.4th at 778 ("[W]e are generally less skeptical of voluntary cessation claims where the change in behavior was unrelated to the relevant litigation.").

[41] Appellants contend that the Mandates are much more likely to recur because the decision to renew them rests "on the judgment of a single person"—the President. Opening Br. 17. However, the President's "power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot. And we know some are." *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021); *see also Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 49 (1st Cir. 2022) (rejecting argument that voluntary cessation exception applied because appellant "face[d] a constant threat that [the Governor] will use [her] power to restore [COVID-19] restrictions that (allegedly) discriminate against religious services").

For the same reason, Appellants cannot establish that the Mandates are capable of repetition but evading review.[42] The capable of repetition yet evading review exception "applies only in exceptional situations where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[43] This exception to mootness does not apply because the Mandates cannot reasonably be expected to recur.[44]

**III.**

Appellants request that we vacate the District Court's decision denying a preliminary injunction. Vacating a judgment "is an exercise of discretion that should occur 'only after a consideration of the equities and the underlying reasons for mootness.'"[45] "[T]he decision whether to vacate turns on 'the conditions and circumstances of the particular case.'"[46]

---

[42] *See Butler*, 8 F.4th at 231 ("A plaintiff bears the burden to show that the 'capable of repetition yet evading review' exception applies.").

[43] *Id.* (citation modified).

[44] *See Lowe*, 126 F.4th at 760 (relying on the reasons for denying the voluntary cessation exception to conclude the vaccine mandate was not capable of repetition); *Resurrection*, 35 F.4th at 530 (holding that the capable of repetition yet evading review exception was "inapposite for largely the same reasons" as the voluntary cessation exception).

[45] *Butler*, 8 F.4th at 232 (quoting *Humphreys v. Drug Enf't Admin.*, 105 F.3d 112, 114 (3d Cir. 1996)).

[46] *Alex M. Azar, II v. Rochelle Garza*, 584 U.S. 726, 729 (2018) (quoting *United States v. Hamburg–Amerikanische Packetfahrt–Actien Gesellschaft*, 239 U.S. 466, 478 (1916)).

The preliminary injunction order is not under review in this appeal. Rather, it was under review more than two years ago when we dismissed that appeal as moot.[47] In the prior appeal, Appellants never requested vacatur from this Court nor did they request it from the District Court on remand when Appellees sought to dismiss the entire case as moot. While we typically vacate a judgment that is unreviewable due to mootness to prevent it "from spawning any legal consequences,"[48] Appellants have not identified any legal consequences that might result. Moreover, Appellants "slept on [their] rights, [and] now ask[] us to do what by orderly procedure [they] could have done" much earlier for themselves;[49] thus, the equities and circumstances of this particular case do not favor vacatur. Therefore, we deny Appellants' request.

**IV.**

For the above reasons, we will affirm the District Court's order dismissing this case and deny Appellants' request for vacatur of the District Court's preliminary injunction decision.

---

[47] *See Smith v. President United States*, No. 21-3091, 2023 WL 5120321, at *1 (3d Cir. Aug. 10, 2023).

[48] *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).

[49] *Id.* at 41.